[Civ. No. 19790.   Second Dist., Div. One.   Mar. 15, 1954.]

GEORGE VERMILLION, Respondent, v. VERNON L. TETERS, Appellant.

Eugene L. Wolver for Appellant.

Mindlin & Levy for Respondent.

DRAPEAU, J.—On September 17, 1951, defendant Teters executed and delivered to Wes Beeman Productions a promissory note for $3,800, payable November 1, 1951. Concurrently therewith, a preliminary agreement was executed by Wes Beeman Productions, as party of the first part, and John L. Carpenter and defendant Teters, as parties of the second part. This agreement provided that the note and property rights to a certain screenplay should ''stand for a maximum of 45 days,'' and gave parties of the second part the right ''to pick this note up at any time prior to its maturity.''

Thereafter, on September 28, 1951, I. Wellesley Beeman, president of Wes Beeman Productions, endorsed and delivered the $3,800 note to plaintiff Vermillion. At the same time, Beeman also gave to plaintiff the unsecured note of the Productions company for $2,200. In return; plaintiff gave to Mr. Beeman a cashier's check of Bank of America for $6,000 made payable to plaintiff and endorsed by him to Wes Beeman Productions.

This $6,000 was given to pay a "deficit in the cost of production" of a television picture, which Mr. Beeman stated he did not have money available to take care of.

Before he acquired the $3,800 note, plaintiff knew the terms and covenants of the preliminary agreement.

When the note became due, plaintiff demanded payment and upon defendant's refusal to pay, brought the instant action.

From the judgment in favor of plaintiff, defendant appeals.

It is here asserted that respondent Vermillion is not a holder in due course of the note sued upon. This for the reason that the preliminary agreement indicates that the note was conditionally delivered, was to be annexed thereto, and was to be retrievable by appellant Teters for a period of 45 days.

In order to be negotiable, an instrument must (1) be in writing and signed by the maker or drawer; (2) contain an unconditional promise or order to pay a sum certain in money; (3) be payable on demand, or at a fixed or determinable future time; (4) be payable to order or to bearer; and (5) where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty. (Civ. Code, § 3082.)

A holder in due course is one who has taken the instrument under the following conditions: (1) that it is complete and regular on its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (Civ. Code, § 3133.)

The instrument here in question conforms to the requirements of section 3082, *supra*, in every respect.

The evidence is amply sufficient to support the trial court's conclusion of law that the respondent was a holder in due course of the note sued upon.

Respondent testified on direct examination that on September 28, 1951, when he received the $3,800 note he did not know of appellant's claims that (1) it "was not to be used until John L. Carpenter signed" it; (2) that there was no consideration for it; (3) that Wes Beeman Productions had not performed its contract with appellant; and (4) that the note was given to the productions company to be held for a period of

45 days and then to be returned to appellant if the latter requested it.

On cross-examination, respondent testified that at a meeting on September 27, 1951, in Wes Beeman's office, he first saw the note and at his request Mr. Landes looked at it and told him that "it was a negotiable instrument." At the same time, the preliminary agreement was passed around but said witness "never had the paper in my hand." Also, he did not ask to see the preliminary agreement because "I had taken Mr. Landes' word for it. . . . After he had viewed the contract he said there was nothing binding in the contract as to the note; that the note was negotiable."

. . ·Mr. Landes, who had been in the banking business from 1926 to 1938, testified that he examined the note and told respondent that it was a negotiable instrument. Further, that "After reading the agreement, I couldn't determine any restrictive clauses in it but, to be further safe, I asked Mr. Beeman if there was any reason, oral or written that he had not told us about, whereby he would be restricted from negotiating the note. Mr. Beeman told me that the note was given to him for the purpose of raising cash . . . because the maker of the note had his own money involved in some other studio and could not, at this time, put up the cash but would redeem the note at a later date. . . . He (Mr. Beeman) said he had taken it to his bank and . . . to three or four banks and their answer, in each case, was that they did not wish to purchase any notes. . . . I asked Mr. Beeman what the words 'pick up' meant in that particular paragraph and he told me that . . . he could pick it up at any time he brought in thirty-eight hundred dollars plus interest."

Respondent not only paid full value for the $3,800 note, but he still had such confidence in Mr. Beeman that he put up another $2,200 against Beeman's unsecured note. As the trial court so aptly said, this is potent evidence of good faith on the part of respondent.

Moreover, it is apparent from the record that respondent purchased the note in reliance upon its unequivocal provisions and the lack of any limiting provisions in the preliminary agreement, coupled with the assurances given by Mr. Beeman and the comments of Mr. Landes upon the terms and effect of the documents. Nothing in the documents themselves or the verbal statements made aroused any suspicion in respondent's mind that appellant might claim an infirmity in the note or

in the title of Wes Beeman Productions thereto, or in its unrestricted right to negotiate the note.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 5, 1954, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1954.